IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

CLIFTON CALLAHAN, )
Register No. 1010582, )
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　v. ) No. 04-4271-CV-C-SOW
　　　　　　　　　　　　　　　　　　　　　　　)
ARTHUR WOODS, et al., )
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants. )

### REPORT, RECOMMENDATION AND ORDER

　　　　Plaintiff, an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

　　　　Plaintiff seeks monetary and injunctive relief, pursuant to 42 U.S.C. § 1983. Named defendants of Missouri State Penitentiary (MSP) are Supt. Arthur Wood; Maj. Boyed; Lt. Page; Capt. Edwards; Lt. Beechmire; Sgt. Saunders; Case Workers Tammi Surface and Stanley Swicord; Correctional Officers Hieriot, Able, Heyer, Strickland, Crawford, Bliuens, and Witt-Lock; Unit Manager Henry Jackson; and Lt. Charlie Wilson; and Correctional Medical Services (CMS) employees Nurses Terri Luckenotte, Lisa Hannegan, and Julie Lansford; Chronic Care Nurses Connie McCullough and Adrean; and Dr. Alfred Garcia.

　　　　Plaintiff alleges that falsified conduct violations have been issued against him, resulting in his assignment to segregation. Plaintiff also alleges that while in administrative segregation, he was subjected to conditions of confinement which included being denied his dinner and snack, despite his diabetic medical condition; denied his insulin; forced to wear a gown that had human feces on it; denied a mattress, water and hygiene supplies such as toilet paper; and finally, that the light bulb was removed from his cell. Plaintiff further alleges that defendants continue to subject him to a serious risk of harm by forcing inmates to double-cell in a maximum security prison administrative segregation unit.

Plaintiff has requested leave to proceed without prepaying the filing fee and costs. 28 U.S.C. § 1915(a). Pursuant to the Prison Litigation Reform Act, the court is required to screen prisoner cases and must dismiss a complaint, or any portion of the complaint, if satisfied that the action is frivolous, malicious, or fails to state a claim under which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) and (2). Additionally, under section 1915(g), if a prisoner, while incarcerated, has had three cases dismissed on any of these grounds, the court must deny leave to proceed under section 1915(a). The only exception to the successive petition clause is when the prisoner faces "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

Plaintiff is granted leave to proceed on his claims regarding the conditions of his administrative segregation confinement. However, plaintiff's claims challenging the conduct violations he received for allegedly threatening staff, and his claims challenging the policy which double-cells administrative segregation inmates should be dismissed for failure to state a claim on which relief may be granted.

Plaintiff's claim that defendants have failed to protect him against potential violence by allowing administrative segregation inmates to be double-celled fails to allege any type of physical injury, as required by 42 U.S.C. 1997e. Section 1997e(e) states that no federal civil action may be brought by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury. Allegations of stress or emotional stress are not enough to satisfy the physical injury requirement of section 1997e(e). *Todd v. Graves*, 217 F. Supp. 958, 960 (8th Cir. 2002). Plaintiff's claim that double-celling of inmates poses a potential threat of harm fails to allege any type of physical injury suffered by plaintiff. Plaintiff's allegation challenging double-celling of inmates fails to state a claim on which relief may be granted, and should be dismissed.

Plaintiff's claims that he was falsely issued a conduct violation are, in essence, allegations that he was denied due process. To establish a due process violation, plaintiff must show a deprivation of a liberty or property interest protected by the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 710-12 (1976). The Due Process Clause does not protect prisoners from every adverse change in their confinement. *Sandin v. Connor*,

2

515 U.S. 472, ___, 115 S. Ct. 2293, 2297 (1995).  If the conditions and degree of confinement are within the sentence imposed and do not otherwise violate the Constitution, prisoners have no claim under the Due Process Clause.  *Montayne v. Hayes,* 427 U.S. 236, 242 (1976).  *See also Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (prisoners have no inherent right to remain in general population).  Disciplinary action taken in response to a prisoner's misconduct "falls within the expected parameters of the sentence."  *Sandin,* 115 S. Ct. at 2301.

To determine whether prisoners have a liberty interest under state law, the court looks at the nature of the deprivation.  *Id.* at 2299-2300.  Generally, state-created liberty interests are "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 2300.  Segregated confinement does not normally "present a dramatic departure from the basic conditions" of prison life.  *Id.* at 2301.

Accordingly, any liberty interest plaintiff may have must be an interest in the nature of his confinement.  There is no liberty interest in the use of certain procedures.  *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("Due Process Clause does not federalize state law procedural requirements")).

Moreover, an inmate who makes a due process challenge to his confinement "must make a threshold showing that the deprivation of which he complains imposed an 'atypical and significant hardship.'"  *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2001).  It has been consistently held that assignment to segregation, even without cause, is not itself an atypical significant hardship.  *Phillips v. Norris*, 320 F.3d at 847.

In the instant case, plaintiff's assignment to segregation as a penalty for the conduct violations received did not impose an atypical and significant hardship.  Plaintiff's claims challenging the issuance of conduct violations against him and his subsequent assignment to segregation fail to identify a liberty interest implicating Fourteenth Amendment due process and should be dismissed.  However, based upon plaintiff's allegations as to the conditions of his administrative confinement, plaintiff is granted leave to proceed on such claims, pursuant to the provisions of the Eighth Amendment.

3

To prevail on his Eighth Amendment conditions-of-confinement claim, plaintiff must show that the conditions were serious enough to deprive him of the minimal civilized measure of life's necessities, or to constitute a substantial risk of serious harm, and that officials were deliberately indifferent to his health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Beyerbach v. Sears*, 49 F.3d 1324 (8th Cir. 1995); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

Although plaintiff's allegations regarding his conditions of confinement may not be sufficient to withstand a motion to dismiss or for summary judgment, they are sufficient, when liberally construed, to allow plaintiff to proceed at this stage.

The Prison Litigation Reform Act of 1995 requires inmates to pay the full filing fee when bringing a civil case or filing an appeal in forma pauperis. 28 U.S.C. § 1915 (as amended Apr. 26, 1996). The records available to the court indicate plaintiff is capable of paying an initial partial filing fee of $2.70.[1] Plaintiff should contact prison officials to have the initial payment processed. In the future, prison officials will withdraw funds from plaintiff's account and forward them to the court, until the filing fee is paid. If plaintiff fails to pay the filing fee, his claims may be dismissed for failure to comply with court orders. Fed. R. Civ. P. 41(b).

Concurrently with his complaint, plaintiff filed a motion for preliminary injunction regarding inmates being double-celled and false conduct violation claims. In light of this court's recommendation of dismissal of such claims, plaintiff's motion for preliminary injunctive relief should be denied.

---

[1] The initial payment is assessed at "20 percent of the greater of (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal." The installment payments will be assessed at "20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid." 28 U.S.C. § 1915 (as amended Apr. 26, 1996). If plaintiff has not signed an authorization for release of inmate account funds, he will need to do so promptly.

4

Plaintiff also filed with his complaint a motion for appointment of counsel, pursuant to 28 U.S.C. § 1915. There exists no statutory or constitutional right for an indigent to have counsel appointed in a civil action for damages. *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985); *Watson v. Moss*, 619 F.2d 775, 776 (8th Cir. 1980) (per curiam). Rather, "[i]n civil rights matters the court *may* pursuant to [28 U.S.C. § 1915(e)], 'request' an attorney to represent a party if, within the court's discretion, the circumstances are such that would properly justify such a 'request.'" *Mosby v. Mabry*, 697 F.2d 213, 214 (8th Cir. 1982).

The trial court must exercise "'a reasoned and well-informed discretion'" in deciding whether to appoint counsel. *Sours v. Norris*, 782 F.2d 106, 107 (8th Cir. 1986) (citation omitted).

The factors to consider in determining whether or not to appoint counsel have been articulated as follows:

> Foremost among the 'certain factors' that an appointing court must consider is an analysis of the merits of the indigent litigant's claims from both a factual and legal standpoint. [It is] clear that a court need not appoint counsel when it considers the indigent's chances of success to be extremely slim. In addition to the merits of a case, a court may consider any of a number of factors. Among these factors are the complexity of the legal issue presented and the capability of the litigant to recognize and present the issues, the complexity and conflicting nature of the facts, the ability of the litigant to investigate his case, and the relative substantive value of the claims presented.

*Caruth v. Pinkney*, 683 F.2d 1044, 1048 (7th Cir. 1982) (citations omitted). *See also Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992); *Johnson v. Williams*, 788 F.2d 1319 (8th Cir. 1986).

Some of the problems inherent in the appointment of counsel in pro se civil cases brought by indigent litigants were discussed by this court in *Ferguson v. Fleck*, 480 F. Supp. 219 (W.D. Mo. 1979) at page 222:

> The Eighth Circuit has ruled that members of the Federal Bar should expect such appointments, on an infrequent basis . . . . Recognizing the time-consuming burdens undertaken by attorneys prosecuting Federal civil litigation, and the problems which would be invited if all colorable claims of indigents were automatically referred to appointed counsel, a troublesome issue of selectivity is imposed on the courts. Care must be exercised to avoid altering the practice of infrequently asking lawyers to serve in civil matters,

an assumption underlying the *Peterson* decision.  Meritorious claims, however, would generally benefit from the assistance of counsel, but the court has few facilities permitting a forecast of substantial merit.

This court has followed a liberal policy of appointing counsel in civil actions brought by prisoners in nonfrivolous cases.  *Green v. Wyrick*, 428 F. Supp. 732, 741 (W.D. Mo. 1976).

Although the court does have the inherent power to appoint counsel in limited circumstances, the United States Supreme Court has held that "[28 U.S.C.] § 1915(d) [now (e)] does not authorize the federal courts to make coercive appointments of counsel." *Mallard v. United States Dist. Court for the Southern Dist. of Iowa*, 490 U.S. 296, 310 (1989).

The issues in plaintiff's complaint are not complex and at this stage in the proceedings, the court does not deem it necessary to appoint counsel.  Plaintiff's claims are yet subject to challenge by dispositive motions.  After the parties have had an opportunity to file the appropriate motions and the court has ruled on said motions, plaintiff may again request appointment of counsel.

IT IS, THEREFORE, ORDERED that plaintiff's motion for appointment of counsel is denied, without prejudice [5].  It is further

ORDERED that plaintiff is granted leave to proceed in forma pauperis, pursuant to the provisions of 28 U.S.C. § 1915, on his Eighth Amendment claims challenging the conditions of his confinement against defendants Tammi Surface, Sgt. Saunders, COI Crawford, COI Able, Lt. Page, COI Heyer, COI Hieriot, Connie McCullough, COI Strickland, and COI Wit-Lock..  It is further

ORDERED that within thirty days, plaintiff pay $2.70 in partial payment of the $150.00 filing fee.  It is further

ORDERED that within thirty days, the Attorney General of Missouri and Correctional Medical Services notify the court, in writing, for which defendants they will and will not waive service of process.  It is further

ORDERED that defendants answer or otherwise respond, pursuant to Fed. R. Civ. P. 4 and 12, within sixty days, if service of process is waived, or within twenty days after service of process, if service of process is not waived.  It is further

6

ORDERED that defendants are granted leave to depose plaintiff at his place of incarceration. It is further

RECOMMENDED that plaintiff's claims challenging the conduct violations he received; his subsequent assignment to segregation; inmates being double-celled; and claims against defendants Arthur Wood, Julie Lansford, Terri Luckenotte, Lisa Hannegan, Chronic Care Nurse Adrean, Dr. Garcia, Lt. Beechmire, Captain Edwards, COI Bliuens, Lt. Charlie Wilson, Stanley Swicord, Henry Jackson, Major Boyed be dismissed for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915A. It is further

RECOMMENDED that plaintiff's request for preliminary injunctive relief regarding double-celling of inmates and claims of false conduct violations be denied [2].

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. If additional time is needed, a motion for an extension of time must be filed within twenty days. The motion should state the reasons for the request. *See Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986) (citing *Thomas v. Arn*, 474 U.S. 140 (1985)); *Messimer v. Lockhart*, 702 F.2d 729 (8th Cir. 1983). Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 29th day of December, 2004, at Jefferson City, Missouri.

/s/

WILLIAM A. KNOX
United States Magistrate Judge

7

Case 2:04-cv-04271-SOW   Document 12   Filed 12/29/04   Page 7 of 7